BRUCE KEEN,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

1:18-cv-13467-NLH

**OPINION**

**APPEARANCES:**

ALAN H. POLONSKY
POLONSKY AND POLONSKY
512 S WHITE HORSE PIKE
AUDUBON, NJ 08106

   *On behalf of Plaintiff*

EMILY BRESLIN MARKOS
SOCIAL SECURITY ADMINISTRATION
OFFICE OF THE GENERAL COUNSEL
300 SPRING GARDEN STREET
6TH FLOOR
PHILADELPHIA, PA 19123

   *On behalf of Defendant*

**HILLMAN**, District Judge

    This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding Plaintiff's application for Disability

Insurance Benefits ("DIB")[1] under Title II of the Social Security Act. 42 U.S.C. § 423, et seq. The issue before the Court is whether the Administrative Law Judge ("ALJ") erred in finding that there was "substantial evidence" that Plaintiff was not disabled at any time since his alleged onset date of disability, October 1, 2013. For the reasons stated below, this Court will affirm that decision.

## I. BACKGROUND AND PROCEDURAL HISTORY

On February 23, 2015, Plaintiff, Bruce Keen, protectively filed an application for DIB,[2] alleging that he became disabled on October 1, 2013. Plaintiff claims that he can no longer work as a house builder and contractor because of his lumbar degenerative disc disease affecting the lumbar spine with lumbar facet disease and obesity.[3]

---

[1] DIB is a program under the Social Security Act to provide disability benefits when a claimant with a sufficient number of quarters of insured employment has suffered such a mental or physical impairment that the claimant cannot perform substantial gainful employment for at least twelve months. 42 U.S.C. § 423 et seq.

[2] A protective filing date marks the time when a disability applicant made a written statement of his or her intent to file for benefits. That date may be earlier than the date of the formal application and may provide additional benefits to the claimant. See SSA Handbook 1507; SSR 72-8.

[3] Plaintiff was 50 years old at the time of the alleged disability onset date, which is defined as a person closely approaching advanced age (age 50-54). (20 C.F.R. § 416.963.)

Plaintiff's claim was denied initially and on reconsideration. Plaintiff requested a hearing before an ALJ, which was held on September 28, 2017. The ALJ issued an unfavorable decision on January 29, 2018. Plaintiff's Request for Review of Hearing Decision was denied by the Appeals Council on July 16, 2018, making the ALJ's January 29, 2018 decision final. Plaintiff brings this civil action for review of the Commissioner's decision.

**II. DISCUSSION**

**A. Standard of Review**

Under 42 U.S.C. § 405(g), Congress provided for judicial review of the Commissioner's decision to deny a complainant's application for social security benefits. Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995). A reviewing court must uphold the Commissioner's factual decisions where they are supported by "substantial evidence." 42 U.S.C. §§ 405(g), 1383(c)(3); Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001); Sykes v. Apfel, 228 F.3d 259, 262 (3d Cir. 2000); Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992). Substantial evidence means more than "a mere scintilla." Richardson v. Perales, 402 U.S. 389, 401 (1971)(quoting Consolidated Edison Co. V. NLRB, 305 U.S. 197, 229 (1938)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. The inquiry is not whether the reviewing

3

court would have made the same determination, but whether the Commissioner's conclusion was reasonable. See Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988).

A reviewing court has a duty to review the evidence in its totality. See Daring v. Heckler, 727 F.2d 64, 70 (3d Cir. 1984). "[A] court must 'take into account whatever in the record fairly detracts from its weight.'" Schonewolf v. Callahan, 972 F. Supp. 277, 284 (D.N.J. 1997) (quoting Willbanks v. Secretary of Health & Human Servs., 847 F.2d 301, 303 (6th Cir. 1988) (quoting Universal Camera Corp. V. NLRB, 340 U.S. 474, 488 (1951)).

The Commissioner "must adequately explain in the record his reasons for rejecting or discrediting competent evidence." Ogden v. Bowen, 677 F. Supp. 273, 278 (M.D. Pa. 1987) (citing Brewster v. Heckler, 786 F.2d 581 (3d Cir. 1986)). The Third Circuit has held that an "ALJ must review all pertinent medical evidence and explain his conciliations and rejections." Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 122 (3d Cir. 2000). Similarly, an ALJ must also consider and weigh all of the non-medical evidence before him. Id. (citing Van Horn v. Schweiker, 717 F.2d 871, 873 (3d Cir. 1983)); Cotter v. Harris, 642 F.2d 700, 707 (3d Cir. 1981).

The Third Circuit has held that access to the Commissioner's reasoning is indeed essential to a meaningful

court review:

> Unless the [Commissioner] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978).  Although an ALJ, as the fact finder, must consider and evaluate the medical evidence presented, Fargnoli, 247 F.3d at 42, "[t]here is no requirement that the ALJ discuss in its opinion every tidbit of evidence included in the record," Hur v. Barnhart, 94 F. App'x 130, 133 (3d Cir. 2004).  In terms of judicial review, a district court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." Williams, 970 F.2d at 1182.  However, apart from the substantial evidence inquiry, a reviewing court is entitled to satisfy itself that the Commissioner arrived at his decision by application of the proper legal standards.  Sykes, 228 F.3d at 262; Friedberg v. Schweiker, 721 F.2d 445, 447 (3d Cir. 1983); Curtin v. Harris, 508 F. Supp. 791, 793 (D.N.J. 1981).

    B.    **Standard for DIB**

The Social Security Act defines "disability" for purposes of an entitlement to a period of disability and disability insurance benefits as the inability to engage in any substantial

5

gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months. See 42 U.S.C. § 1382c(a)(3)(A). Under this definition, a Plaintiff qualifies as disabled only if her physical or mental impairments are of such severity that she is not only unable to perform her past relevant work, but cannot, given her age, education, and work experience, engage in any other type of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which she lives, or whether a specific job vacancy exists for her, or whether she would be hired if she applied for work. 42 U.S.C. § 1382c(a)(3)(B) (emphasis added).

The Commissioner has promulgated regulations[4] for determining disability that require application of a five-step sequential analysis. See 20 C.F.R. § 404.1520. This five-step process is summarized as follows:

1. If the claimant currently is engaged in substantial gainful employment, she will be found "not disabled."

2. If the claimant does not suffer from a "severe impairment," she will be found "not disabled."

3. If the severe impairment meets or equals a listed

---

[4] The regulations were amended effective March 27, 2017. Neither party indicates that these amendments impact Plaintiff's appeal.

6

>     impairment in 20 C.F.R. Part 404, Subpart P, Appendix
>     1 <u>and</u> has lasted or is expected to last for a
>     continuous period of at least twelve months, the
>     claimant will be found "disabled."
>
> 4.  If the claimant can still perform work she has done in
>     the past ("past relevant work") despite the severe
>     impairment, she will be found "not disabled."
>
> 5.  Finally, the Commissioner will consider the claimant's
>     ability to perform work ("residual functional
>     capacity"), age, education, and past work experience
>     to determine whether or not she is capable of
>     performing other work which exists in the national
>     economy. If she is incapable, she will be found
>     "disabled." If she is capable, she will be found "not
>     disabled."

20 C.F.R. § 404.1520(b)-(f). Entitlement to benefits is therefore dependent upon a finding that the claimant is incapable of performing work in the national economy.

This five-step process involves a shifting burden of proof. <u>See</u> <u>Wallace v. Secretary of Health & Human Servs.</u>, 722 F.2d 1150, 1153 (3d Cir. 1983). In the first four steps of the analysis, the burden is on the claimant to prove every element of her claim by a preponderance of the evidence. <u>See</u> <u>id.</u> In the final step, the Commissioner bears the burden of proving that work is available for the Plaintiff: "Once a claimant has proved that he is unable to perform his former job, the burden shifts to the Commissioner to prove that there is some other kind of substantial gainful employment he is able to perform." <u>Kangas v. Bowen</u>, 823 F.2d 775, 777 (3d Cir. 1987); <u>see</u> <u>Olsen v. Schweiker</u>, 703 F.2d 751, 753 (3d Cir. 1983).

**C. Analysis**

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset of disability. At step two, the ALJ found that Plaintiff had the serve impairments of lumbar degenerative disc disease affecting the lumbar spine with lumbar facet disease and obesity during the relevant time period – October 1, 2013 (his alleged disability onset date) and March 31, 2014 (the date he was last insured for DIB). At step three, the ALJ determined that Plaintiff's severe impairments or his severe impairments in combination with his other impairments did not equal the severity of one of the listed impairments.

The ALJ then determined that Plaintiff had the residual functional capacity ("RFC") to perform unskilled work at the light exertional level[5] with certain restrictions. After considering a vocational expert's testimony, the ALJ concluded that Plaintiff's RFC did not enable him to perform his past relevant work as a house builder and contractor, but he was capable of jobs such as an assembler, counter attendant, and retail price marker (steps four and five).

Plaintiff argues that the ALJ erred by not adopting the

---

[5] 20 C.F.R. § 404.1567 ("Physical exertion requirements. To determine the physical exertion requirements of work in the national economy, we classify jobs as sedentary, light, medium, heavy, and very heavy.").

8

functional limitations set forth by Plaintiff's treating physician, Steven Ressler, M.D. Plaintiff further argues that if the ALJ afforded the proper weight to Dr. Ressler's opinion, Plaintiff must be found disabled. Relatedly, Plaintiff argues that the ALJ's RFC determination is flawed based on the ALJ's improper consideration of Dr. Ressler's opinions.

The Court does not find Plaintiff's arguments availing. The ALJ explained in her decision:

- Between the date of Plaintiff's disability onset date, October 1, 2013, and the date he was last insured, March 31, 2014, Plaintiff met with his treating physician, Steven Ressler, M.D., three times and was prescribed Methadone for pain.

- On June 18, 2014, which is after the date last insured ("DLI"), Dr. Ressler reported: The claimant exhibited a reduced range of motion with tenderness in the lumbar spine, pain with range of motion and a normal gait. He had no motor, sensory or reflex deficits. He was diagnosed with lumbosacral spondylosis without myelopathy, displacement of a lumbar intervertebral disc, and degeneration of the lumbar intervertebral disc. He was prescribed Methadone for pain. (R. at 20.)

- Between August 13, 2014 and July 5, 2017, Plaintiff

9

was examined by Dr. Ressler seventeen times. During this period, Plaintiff's presentation remained unchanged from Dr. Ressler's June 18, 2014 examination, and he was prescribed Methadone for pain.

- Almost three years after Plaintiff's DLI, Dr. Ressler completed a check-the-box form indicating the following:

  On August 18, 2017, Dr. Ressler concluded that the claimant could lift 20 pounds occasionally, 10 pounds frequently, stand or walk for less than 2 hours and sit for less than 2 hours (Exhibits 4F and 6F). He could sit for 20 minutes before changing positions, stand for 20 minutes before changing positions, and walk for 20 minutes before changing positions. He needed to walk for 10 minutes on each occasion. He needed an opportunity to shift positions at will from sitting or standing and walking. He needed to lie down 2 or 3 times during his work shift. He could never climb ladders but could occasionally twist, stoop, crouch and climb stairs. He was to avoid concentrated exposure to extreme cold and heat, humidity, and fumes, odors, dust, gases and poor ventilation. He would be absent from work more than three times a month.

  (R. at 24.)

- The ALJ noted:

  In evaluating the claimant's longitudinal medical history, the undersigned notes that even after the date last insured, Dr. Ressler concluded that the claimant was doing well with his treatment regimen suggesting that his Methadone was controlling his pain sufficiently suggesting that if he had experienced increased levels of pain during the relevant period and availed himself of more frequent treatment, he would have been doing well during that period (Exhibits 3F and 8F).

10

(R. at 23.)

- The ALJ further noted:

    [T]he claimant's most recent imaging study was performed more than 3 years after the relevant period, he underwent treatment with pain management on only three occasions during the relevant period and there is no evidence that his primary care physician was prescribing pain medications concurrently (Exhibits 3F, *5F* and 8F). He later responded well to treatment with pain medication according to Dr. Ressler as he was doing well (Exhibits 3F and 8F).

    (R. at 24.)

- The ALJ therefore afforded some weight to Dr. Ressler's opinion. The ALJ assigned great weight to Dr. Ressler's opinion that Plaintiff could lift 20 pounds occasionally, 10 pounds frequently, occasionally climb ramps and stairs, kneel and stoop and never climb a ladder, and avoid concentrated exposure to pulmonary irritants. The ALJ assigned little weight to the remainder of Dr. Ressler's opinion because it was not consistent with the medical record as whole, which included Dr. Ressler's own treatment notes. (R. at 24.)

Plaintiff essentially argues that the ALJ should have accepted all of Dr. Ressler's opinions in his medical source statement. Even though it is true that a "cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially

11

when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time," Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (citations and quotations omitted), an ALJ may reduce her reliance upon a treating physician's opinions if those opinions are inconsistent with other medical evidence, and if she explains her reasoning. Plummer v. Apfel, 186 F.3d 422, 439 (3d Cir. 1999) ("[A]n ALJ is permitted to accept or reject all or part of any medical source's opinion, as long as the ALJ supports his assessment with substantial evidence."), cited by Brownawell v. Commissioner, 554 F.3d 352, 355 (3d Cir. 2008)); Cotter v. Harris, 642 F.2d 700, 705 (3d Cir. 1981) ("We are also cognizant that when the medical testimony or conclusions are conflicting, the ALJ is not only entitled but required to choose between them.... [W]e need from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected.").

The ALJ properly followed these requirements in this case. The ALJ was tasked with determining whether Plaintiff was disabled as of March 31, 2014. The ALJ considered Plaintiff's treating history with Dr. Ressler, which only began five months before Plaintiff's DLI, the other medical evidence in the record, and Plaintiff's testimony. The bulk of this evidence post-dated March 31, 2014, but the ALJ thoroughly set forth all

of the medical evidence to determine whether Plaintiff was disabled at that time. The ALJ explained which evidence she found credible and why, and she explained why she discounted other evidence. The ALJ concluded that as of the date of her decision, and as of March 31, 2014, Plaintiff was still capable of light work. Plaintiff disagrees with this finding, but it cannot be found that it is not supported by substantial evidence.

Plaintiff also argues that the ALJ erred by not considering Dr. Ressler's post-hearing interrogatories posed by Plaintiff's counsel, to which Dr. Ressler stated that his medical source statement prepared on August 18, 2017 applied to the relevant time period at issue – October 1, 2013 and March 31, 2014. Plaintiff argues that the ALJ's failure to consider those interrogatories violates his due process rights and warrants remand. The Court does not agree.

Defendant explains that even though the interrogatories are in the record (R. at 335), the answers are not, and Plaintiff did not make this argument to the Appeals Council, and he has not provided the answers to this Court. Defendant represents that Dr. Ressler answered "no" in response to the question, "Has your patient's condition significantly changed since March 31, 2014 to the extent that your opinions concerning his abilities on or prior to this date would have been different?" (Docket

13

No. 13 at 16 n.3.) Defendant represents that Dr. Ressler answered "no change" to the question, "If you answered the above in the affirmative, please indicate which items . . . would not have been accurate as of March 31, 2014 . . . ?" (Id.) Plaintiff does not explain how these answers would have impacted the ALJ's analysis of Dr. Ressler's opinion, other than to state in a conclusory fashion that the ALJ should have simply accepted Dr. Ressler's medical source statement and deemed Plaintiff to be disabled.

As discussed above, the ALJ properly assessed Dr. Ressler's August 18, 2017 medical source statement in the context of the record as a whole, which demonstrates that Plaintiff's presentation remained unchanged during his entire course of treatment with Dr. Ressler from February 14, 2013 through July 5, 2017. This finding is only reaffirmed by Dr. Ressler's answer to the interrogatories – Dr. Ressler's opinion was the same for over four years. Thus, the ALJ's fully supported assessment of Dr. Ressler's opinion applies no matter whether it encompassed the pre-DLI or post-DLI time periods. The answers to the interrogatories, if even found to be properly raised here, have no substantive impact on Plaintiff's benefits determination.

Two additional points of law support the ALJ's assessment. One, the RFC finding is a determination expressly reserved to

the Commissioner of Social Security – a claimant's medical provider's opinion on that issue is not controlling. 20 C.F.R. §§ 404.1527(d)(2), 404.1546(c). Two, the opinion of Dr. Ressler that Plaintiff contends the ALJ should have afforded significant weight in its entirety was provided on a form (R. at 324-327), which is considered "weak evidence." Mason v. Shalala, 994 F.2d 1058, 1065 (3d Cir. 1993) ("Form reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best."); Zonak v. Commissioner of Social Sec., 290 F. App'x 493, 497 (3d Cir. 2008) (affirming the ALJ's rejection of the plaintiff's treating physician's opinion because it was provided on a check-box form and no reasons were given in support of the doctor's conclusion on that form). Thus, the Court finds that the ALJ's assessment of Plaintiff's treating physician's medical records and opinions was proper, and the ALJ's RFC determination was supported by substantial evidence.

### III. Conclusion

For the foregoing reasons, the ALJ's determination that Plaintiff was not totally disabled as of October 1, 2013 is supported by substantial evidence. The decision of the ALJ is therefore affirmed. An accompanying Order will be issued.

Date: August 29, 2019　　　　　　　s/ Noel L. Hillman
At Camden, New Jersey　　　　　　NOEL L. HILLMAN, U.S.D.J.